# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**UNITED STATES OF AMERICA**

v.     **CRIMINAL CASE NO. 2:18-CR-18-KS-MTP**

**HOPE EVANGULANE THOMLEY,** *et al.*

## ORDER

Defendants are accused of conspiring to and engaging in a scheme to defraud health care insurance companies of millions of dollars by formulating, marketing, prescribing, and billing for fraudulent compounded medications. Defendants are also accused of conspiring to and engaging in a scheme to pay and receive kickbacks and bribes in promotion of their scheme, and of conspiring to and engaging in a scheme to launder the fraudulently obtained proceeds of their crimes.

Defendants jointly filed a Motion to Transfer Venue [124] of this case to the Northern Division of this District. They argue that a transfer is necessary because of "the extensive and extremely inflammatory pretrial publicity this matter has received regularly and repeatedly since January 2016." Motion to Transfer Venue at 1, *United States v. Thomley*, No. 2:18-CR-18-KS-MTP (S.D. Miss. Oct. 5, 2018), ECF No. 124. Defendants note that the Government has separately indicted and obtained guilty pleas from numerous co-conspirators, and that those proceedings have been reported by media outlets in the Hattiesburg area. *Id.* at 2. Defendants further note that the only co-conspirator to go to trial was convicted on all sixteen charged counts and

sentenced earlier this year. *Id.* at 3. Defendants contend that the "saturation of media attention naming [them] along with the guilty parties has effectively already convicted [them] in the court of public opinion," and, therefore, they are entitled to a change of venue to the Northern Division. *Id.* Defendants did not request a live hearing on the motion. Regardless, there do not appear to be any disputed facts.

The Constitution and Rule 18 require that a criminal trial be held in the district in which the crime occurred. U.S. CONST. art. 3, § 2, cl. 3; U.S. CONST. amend. VI; FED. R. CRIM. P. 18. But the Constitution does not require that a criminal trial be held in any particular division with a district. *United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002). Rather, the Rules of Criminal Procedure require that "[t]he court must set the place of a trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." FED. R. CRIM. P. 18. The Court may also consider other facts, such as pretrial publicity. *Lipscomb*, 299 F.3d at 340, 343-44.

Here, Defendants argue that they can not receive a fair trial in Hattiesburg because of inflammatory pretrial publicity. "A fair trial in a fair tribunal is a basic requirement of due process." *Jones v. Davis*, 890 F.3d 559, 567 (5th Cir. 2018). Criminal defendants are entitled to a "panel of impartial, indifferent jurors." *Murphy v. Florida*, 421 U.S. 794, 799, 95 S. Ct. 2031, 44 L. Ed. 2d 589 (1975) (punctuation omitted). "[L]egal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Sheppard v. Maxwell*, 384 U.S. 333, 350,

86 S. Ct. 1507 (1966). Accordingly, the Supreme Court has overturned "conviction[s] obtained in . . . trial atmosphere[s] . . . utterly corrupted by press coverage." *Murphy*, 421 U.S. at 798.

But juror exposure to news accounts of a defendant's alleged crimes is not, by itself, sufficient to deprive a defendant of due process. *Id.* at 799. "Prominence does not necessarily produce prejudice, and juror *impartiality* . . . does not require *ignorance*." *Skilling v. United States*, 561 U.S. 358, 381, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010). "[P]retrial publicity – even pervasive, adverse publicity – does not inevitably lead to an unfair trial." *Id.* at 384. Rather, to demonstrate that a change of venue is necessary to prevent a deprivation of due process, a defendant must present evidence "of inflammatory, prejudicial pretrial publicity that so pervades or saturates the community as to render virtually impossible a fair trial by an impartial jury drawn from that community . . . ." *Mayola v. Alabama*, 623 F.2d 992, 997 (5th Cir. 1980).

Defendants point to media coverage of the FBI raids in 2016 that kicked off the present string of prosecutions, media coverage of the trial of Albert Diaz, media coverage of their indictment, and media coverage of their alleged co-conspirators' guilty pleas. Defendants presented dozens of news articles and social media postings related to these matters as exhibits to their motion. They also hired a third party, Dancel Multimedia, to conduct a "Pretrial Publicity Survey" that presented an electronic questionnaire to 259 participants through a service called "Survey Monkey." *See* Exhibit S to Motion to Transfer Venue, *United States v. Thomley*, No. 2:18-CR-18-KS-

MTP (S.D. Miss. Oct. 5, 2018), ECF No. 124-19.

Dancel concluded that "Eastern District participants are very knowledgeable about this case," and that a local blogger "has had an undeniably negative effect on the potential jury pool in the Eastern Division." *Id.* at 13. It also rejected the Southern Division as a potential venue, claiming that knowledge of the Diaz case had tainted the jury pool there. *Id.* However, Dancel claimed that the "majority of participants" in the Northern Division "were not informed about this case or any related cases," and recommended that the "jury pool expansion be requested to include those situated within the Northern Division." *Id.*

The Court finds the Dancel report virtually useless in addressing the present motion. First, the survey's sample size was too small. Dancel only surveyed 259 participants drawn from three of this Court's four divisions. According to the 2010 census, the total population of this District was 1,853,619 people.[1] The total population of the three divisions from which the survey sample was drawn was 1,697,592 people. Therefore, Dancel only surveyed 0.014% of the population of this District, and 0.015% of the population of the three divisions sampled. Additionally, Dancel only surveyed 0.019% of the population of the Eastern Division, 0.021% of the population of the Southern Division, and 0.011% of the population of the Northern Division. Even if the entire sample had been drawn from Hattiesburg, it would still only represent 0.553% of the city's total population of 46,805. Of course, the Court draws its jury pool from

---

[1] The Court may take judicial notice of United States census data. *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011).

registered voters, rather than the total population, somewhat mitigating these extreme figures. However, the Court is still troubled by the small sample size.

The Court is more troubled by Dancel's failure to explain *how* they selected their sample. Did they obtain responses online or via social media? Did respondents self-select? Did Dancel collect other demographic data to ensure that the sample was representative of the divisions as a whole? Were the respondents eligible for jury service? What were the respondents' news consumption habits, and did they vary from the rest of the population? Without more information, the data collected – from an already meager sample size – is meaningless because the Court has no means of determining whether Dancel utilized a representative sample.

Nevertheless, the Court agrees that Defendants' jury should not be drawn solely from the Eastern Division. Hattiesburg is a relatively small community. *See Skilling*, 561 U.S. at 382 (court should consider the size and characteristics of the community). Most of the events leading to this trial have occurred in Forrest and Lamar Counties, and these matters have been highly publicized in print, online, and television media. Together, Forrest and Lamar Counties constitute 37.03% of the total population of the Eastern Division.

But widespread publicity is not necessarily prejudicial. *Id.* at 384. The articles from legitimate media sources attached to Defendants' motion are relatively benign, providing bare reports of facts related to these events. This type of factual reporting is not prejudicial enough to warrant a change of venue. *See Murphy*, 421 U.S. at 802; *Meeks v. Moore*, 216 F.3d 951, 964 (11th Cir. 2000); *Devier v. Zant*, 3 F.3d 1445, 1461-

62 (11th Cir. 1993); *Mayola*, 623 F.3d at 997. Defendants also presented material from less conventional news sources, such as social media and a local blog, that have been undeniably inflammatory and slanted in favor of the Government. The media coverage of these matters – from both traditional and non-traditional sources – has been constant over the past couple of years, and continues to the present. Although the Court does not believe that it has been sufficiently inflammatory or pervasive to render it *impossible* to seat an impartial jury from the Eastern Division alone, it would be quite difficult to do so.

Fortunately, there are numerous methods the Court can and will employ to ensure that an impartial jury is empaneled. *Skilling*, 561 U.S. at 386 (trial judge's discretion over jury selection). First, the Court will expand the jury pool to include the entire Southern District of Mississippi. *See* 28 U.S.C. § 1861. The population of the Northern Division alone (863,633) exceeds that of the Southern and Eastern Divisions combined (833,959). Defendants have conceded that they could receive a fair trial in the Northern Division, and they have not addressed the Western Division. Therefore, expanding the jury pool to include the entire District should ensure the Court's ability to seat an impartial jury. Defendants conspicuously failed to address this option in briefing, even after it was raised by the Government.

Additionally, the Court will employ the same means it uses in every case to ensure that it seats an impartial jury. It will conduct *voir dire* as it typically does. First, the Court will examine the *venire*, both collectively and, where necessary and

6

appropriate, individually. If the parties have any questions they want the Court to ask, they are free to request it. Where necessary, the Court will examine individuals at sidebar, to prevent tainting the entire *venire*. Then the parties' counsel will be permitted to examine the *venire*, both collectively and, where necessary and appropriate, individually. The undersigned judge generally gives attorneys substantial room to conduct their own *voir dire*, as long as they stay focused on gathering relevant information, rather than arguing their case.

The Court will not conduct or allow individual *voir dire* of every potential juror as a matter of course, and it will not allow pretrial questionnaires. The parties will receive basic information regarding the potential jurors – name, sex, occupation, race, county of residence – on the morning of jury selection.

The Court also intends to summon a larger *venire* than it typically does, increasing the pool of potential jurors. The Court will seat at least three alternates because of the anticipated length of the trial and the fact that it will be held during flu season. More alternates means that Defendants will get more peremptory strikes, which they can use as they deem necessary.

In summary, even if a defendant demonstrates that there has been sufficient inflammatory pretrial publicity to raise a presumption of prejudice, remedial measures can rebut that presumption. *Lipscomb*, 299 F.3d at 344. Assuming *arguendo* that Defendants have presented sufficient evidence to raise a presumption of prejudice, the remedial measures outlined by the Court above – particularly using a District-wide

jury pool – are sufficient to rebut that presumption. The Court **denies** Defendants' Motion to Transfer Venue [124].

SO ORDERED AND ADJUDGED this 14th day of November, 2018.

          /s/ Keith Starrett
          KEITH STARRETT
          UNITED STATES DISTRICT JUDGE